**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **JASON MCGEHEE,** *et al.,* | § | |
| *Plaintiffs,* | § | |
| | § | **Case No. 4:18-mc-01546** |
| **v.** | § | |
| | § | **Related to E.D. Ark. Case** |
| **TEXAS DEPARTMENT OF** | § | **No. 4:17-CV-00179-KGB** |
| **CRIMINAL JUSTICE,** | § | |
| *Defendant.* | § | |

---

### TEXAS DEPARTMENT OF CRIMINAL JUSTICE'S DISPOSITIVE MOTION TO DISMISS PLAINTIFFS' MOTION TO COMPEL COMPLIANCE WITH SUBPOENA

---

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for
Civil Litigation

SHANNA E. MOLINARE
Assistant Attorney General
Chief, Law Enforcement Defense Division

DEMETRI ANASTASIADIS*
Assistant Attorney General
Texas State Bar No. 01164480

Law Enforcement Defense Division
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas  78711-2548
(512) 463-2080 / Fax (512) 370-9374
demetri.anastasiadis@oag.texas.gov


**ATTORNEYS FOR RESPONDENTS
TEXAS DEPARTMENT OF CRIMINAL JUSTICE AND SHERRI JACKSON
*Attorney of Record**

# TABLE OF CONTENTS

Table of Authorities ......................................................................................................... iii

I.      Summary of litigation and defective issuance and service of summons and subpoena ..............................................................................................................1

II.     The subpoena  has not been served on TDCJ's custodian of records ..................................2

III.    The documents requests identified in the subpoena are overbroad ....................................5

IV.    No production costs were paid to Sherri Jackson. ...........................................................5

V.     Privilege ...........................................................................................................6

VI.    Applicable Procedure ..........................................................................................14

VII.   Privilege Log ...................................................................................................16

VIII.  Documents identified in the subpoena are not relevant to this litigation...........................18

IX.    Deliberative Process Privilege ...............................................................................27

X.     Plaintiffs' argument that any TDCJ employee may be served with a subpoena has no merit.....................................................................................................28

Conclusion .................................................................................................................29

Certificate of Service .....................................................................................................32

# TABLE OF AUTHORITIES

**Cases**

*Aeritas, LLC v. Delta Airlines, Inc.*,
  2013 U.S. Dist.LEXIS 22654, *5 (N.D. Ga., 2013) .................................................. 17

*Arthur v. Commissioner, Alabama Dep't of Corrections*,
  840 F.3d 1268 (11th Cir. 2016). ……………………….. ………… ……………………… 9, 18

*Arthur v. Dunn*,
  2016 U.S. Dist. LEXIS 50756, *24 (M. D. Ala 2016) ........................................... 27

*Bahrami v. Maxie Price Chevrolet-Oldsmobile, Inc.*,
  2013 U.S. Dist. LEXIS 189691 *12-13 (N.D. Ga. 2013) ................................ 17, 21

*Baze v. Rees*,
  553 U.S.35 (2008) ....................................................................................... 1, 18

*Benford v. American Broadcasting*,
98 F.R.D. 40 (D.Md.1983) ........................................................................... 28

*Boyd v. Warden, Holman Correctional Facility*,
  856 F.3d 853 (11th Cir. 2017) .................................................................... 19

*Bryan v. State*,
  753 So. 2d 1244 (Fla. 2000) ........................................................................ 14

*Camreta v. Greene*,
  563 U.S. 692, 131 S.Ct. 2020, 179 L.Ed.2d 1118 (2011) ....................... 29

*Chima v. U.S. Department of Defense*,
  23 F.App'x 721 (9th Cir.2001) ................................................................... 28

*Cooey v. Strickland*,
  604 F.3d 939 (6th Cir. 2010) ....................................................................... 9

*Daubert v. NRA Group, LLC*,
  861 F.3d 382 (3rd Cir. July 3, 2017) ........................................................ 29

*Dering v. Serv. Experts Alliance LLC*,
  2007 U.S. Dist. LEXIS 89972 *2 (N.D. Ga. 2007) .................................. 21

*Doe v. Hersemann*,
  155 F.R.D. 630 (N.D.Ind.1994) ................................................................. 28

*Dole v. Milonas*,
  889 F.2d 885 (9th Cir. 1991) ...................................................................... 16

*Doss v. Helpenstell*,
    699 Fed.Appx. 337  (5th Cir. 2017) ...................................................................... 28

*E.E.O.C. v. Jack Marshall Foods, Inc.*,
    2010 U. S. Dist LEXIS 172, *6 (S. D. Ala 2010) ............................................... 17

*E.E.O.C. v. Original Honeybaked Ham Co. of Georgia, Inc.*,
    2012 U.S.Dist. LEXIS 37107 *3 .......................................................................... 17

*E.E.O.C. v. S. Haulers*,
    2012 WL 1768064 ................................................................................................ 17

*Electronic Data Systems Corp. v. Steingraber*,
    2003 WL 21653414 (E.D. Tex.2003) .................................................................. 28

*First Amendment Coalition of Arizona, Inc., et al., v. Ryan*,
    No. 2:14-CV-01447-NVW-JFM, 2016 WL 2893413 (D. Ariz. May 28, 2016)............... 10, 13

*Flynn v. Roanoke Cos. Group, Inc.*,
    2007 U.S. Dist. LEXIS 93716, 21 (N.D. Ga. 2007).................................................. 17

*Ga. Aquarium, Inc. v. Pritzker*,
    134 F. Supp. 3d 1374 (N.D. Ga. 2014) ................................................................ 27

*Georgia Dept. of Corrections v. Jordan et al., Cause*,
    No. 1:16-cv-02582-RWS-JCF, 2016 WL 9776069 (N. D. Ga.2016) ..................... 22

*Gissandaner v. Ga. Dep't of Corr.*,
    779 F.3d 1275 (11th Cir. 2015)................................................................ 7, 23, 26

*Gissandaner, v. Commissioner, Georgia Department of Corrections*,
    803 F.3d 565 (11th Cir. 2015)................................................................ 7, 18, 26

*Glossip v. Gross*,
    135 S.Ct.2726 (2015) ............................................................................. 1,18, 19

*Hamm v. Dunn*,
    2018 WL 723104 (N.D. Al., February 6, 2018)..................................................... 18

*In re Grand Jury Proceedings*,
    832 F.2d 554 (11th Cir. 1987)............................................................................. 22

*In re Lombardi*,
    741 F.3d 888 (8th  Cir. 2014).......................................................................... 14, 23

*In re Mo. Dep't Corr.*,
  839 F.3d 732 (8th. Cir. 2016)...........................................................................5, 8, 9

*In re Ohio Execution Protocol (Fears v. Morgan)*,
  860 F.3d 881 (6th Cir. 2017)................................................................................ 18

*In re Ohio Execution Protocol Litigation*,
  881 F.3d 447 (6th Cir. 2018)................................................................................ 18

*In re Ohio Execution Protocol Litigation*,
  No. 2:11-cv-1016, 2017 WL 5020138, (S.D. Ohio, November 3, 2017).................................. 19

*In re Subpoena Duces Teucm to AOL, LLC*,
  550 F. Supp. 2d 606 (E.D. Va. 2008)....................................................................... 5

*In re: Virginia Dep't of Corrections v. Jordan*,
  No. 3:17mc02, 2017 WL 5075252 (E.D. Va. Nov. 3, 2017) ............................................5, 8, 9

*Jones v. Comm'r, Ga. Dep't of Corr.*,
  811 F.3d 1288 (11th Cir.2016) ........................................................................ 13, 26

*Jordan v. Hall*,
  No. 3:15CV295HTW-LRA, 2018 WL 1546632 at *9-11 (March 29, 2018)...................................7,19

*Kelley v. Johnson, No CV-15-992*,
  496 S.W.3d 346 (Ark. 2016) ......................................................................... 20,23,24

*Laun v. Laun*,
  No. 1:06–CV–246, 2007 WL 178607 n. 1 (N.D.Ind. Jan.19, 2007) ........................................ 28

*Liles v. Stuart Weitzman, LLC*,
  2010 U.S. Dist. LEXIS 53584, 2010 W L 1839229 (S. D. Fla. 2010)..................................... 17

*Lockett v. Evans*,
  330 P.3d 488 (Okla. 2014) ......................................................................... 14, 24

*Maiz v. Virani*,
  311 F.3d 334 (5th Cir. 2002)............................................................................ 3

*McClendon v. TelOhio Credit Union, Inc.*,
  No. 2:05–CV–1160, 2006 WL 2380601 (S.D.Ohio Aug.14, 2006) ......................................... 28

*McGehee v. Hutchinson*,
   854 F.3d 488 (8th Cir. 2017).................................................................... 1

*Micro Motion, Inc. v. Kane Steel Co.*,
   894 F.2d 1318 (Fed. Cir. 1990)................................................................ 15

*Ohio Execution Protocol Litigation*,
   845 F.3d 231 (6th Cir. 2016).............................................................. 5, 9

*Owens v. Hill*,
   758 S.W. 2d 794 (Ga. 2014)........................................... 7, 13, 22, 23, 25

*Pardo v. State*,
   108 So. 3d 558 (Fla. 2012).............................................................. 14, 23

*Phillips v. DeWine*,
   92 F. Supp. 3d 702 (S.D. Ohio 2015)............................................. 14, 24

*Porter v. Ray*,
   461 F.3d 1315 (11th Cir. 2006).................................................................. 22

*Powell v. Time Warner Cable, Inc.*,
   No. 2:09–cv–00600, 2010 WL 5464895 (S.D. Ohio Dec. 30, 2010)............ 28

*Premium Serv. Corp. v. Sperry & Hutchinson Co.*,
   511 F.2d 225 (9th Cir. 1975)........................................................................ 24

*Pride Family Brands, Inc. v. Carls Patio, Inc.*,
   2013 U.S. Dist. LEXIS 123787, 2013 (S.D. Fla. 2013)................................ 6

*Schad v. Brewer*,
   No.  CV-13-2001-PHX-ROS, 2013 WL 5551668 (D. Ariz. 2013) ........................ 14

*Sepulvado v. Jindal*,
   729 F.3d 413 (5th  Cir. 2013)..................................................... 14, 23

*Small v. Provident Life and Acc. Ins. Co., No. CIV. A.*,
   98–2934, 1999 WL 1128945 (E.D. Pa. 1999)............................................ 24

*Somer v. Johnson*,
   704 F.2d 1473 (11th Cir. 1983)................................................................ 21

*Taylor v. Countrywide Home Loans*,
   No. 08–13258, 2009 WL 1913417 (E.D.Mich. June 30, 2009).................... 28

*Taylor v. Nix,*
    451 F. Supp. 2d 1351 (N. D. Ga. 2006) .......................................................... 23, 26

*Terrel v. Bryson,*
    807 F. 3d 1276 (11th Cir. 2015) ....................................................................... 26

*Theofel v. Farey-Jones*,
    359 F.3d 1066 (9th Cir. 2004) ........................................................................... 5

*Threadgill v. Armstrong World Indus., Inc.*,
    928 F.2d 1366 (3d Cir. 1991) ......................................................................... 29

*Trottie v. Livingston,*
    766 F.3d 450 (5th Cir. 2014) ..................................................................... 6, 13

*United States v. Omnicare, Inc.*,
    2015 U.S. Dist. LEXIS 104819 (M.D. Ga. 2015) ...................................... 4, 14

*U.S. v. $184,505.01,*
    72 F.3d 1160 ........................................................................................................ 3

*Valle v. Singer,*
    655 F.3d 1223 (11th Cir. 2011) ....................................................................... 13

*Wellons v. Comm'r, Georgia Dept. of Corrections*,
    754 F.3d 1260 (11th Cir.2014) ........................................................ 10, 14, 23, 26

*West v. Schofield,*
    460 S.W. 3d 113 (Tenn. 2015) ...................................................................... 23

*Whitaker v. Collier,*
    862 F.3d 490 (5th Cir. 2017) ............................................................................ 6

*Whitaker v. Livingston,*
    No. H-13-2901 2016 WL 3199532 (S.D. Tex., June 6, 2016) ............................ 6

*Wiwa v. Royal Dutch Petroleum Co.,*
    392 F.3d 812 (5th Cir. 2004) ..................................................................... 19, 24

*Yohey v. Collins,*
    985 F.2d 222 (5th Cir. 1993) .......................................................................... 28

*Zink v. Lombardi*,
    783 F.3d 1089 (8th Cir.2015) ............................................................. 11, 14, 23

**Codes**

Tex. Civ. Prac. & Rem. Code Sec. 22.001(a) ................................................... 6

Tex. Civ. Prac. & Rem. Code Sec. 22.004 ..................................................................... 6

Tex. Civ. Prac. & Rem. Code Sec. 101.102(c) ............................................................... 2

Tex. Code Crim. Proc. art. 43.14, ................................................................... 11, 17, 20

Tex. Code Crim. Proc. art. 43.14(b) ......................................................... 11, 17, 20, 22

Tex. Code Crim. Proc. art. 43.14(b)(1)(2) ................................................................... 21

Tex. Code Crim. Proc. art. 43.14(b)(2) ........................................................... 17, 20, 21

Tex. Gov't. Code § 552.021, ........................................................................... 11, 17, 20

Tex. Gov't. Code § 552.352 .................................................................................. 3, 11, 22

Tex. Gov't. Code § 552.1081 ....................................................................... 11, 17, 20, 22

Tex. Pen. Code § 39.02 ................................................................................................ 12

Tex. Pen. Code § 39.09 ................................................................................................ 22

**Rules**

Fed. R. Civ. P. 12(b) (4), (5),  and (6) ........................................................................... 1

Fed. R. Civ. P. 12(b)(4), (5), (6) and 45(D)(2)(B) ....................................................... 29

Fed. R. Civ. P. 26 and 45 ............................................................................................. 24

Fed. R. Civ. P. 26(b) ............................................................................................... 16, 21

Fed. R. Civ. P. 26(c)(1) ................................................................................................ 24

Fed. R. Civ. P. 45 ............................................................................................... 16, 27, 28

Fed. R. Civ. P. 45(b)(1) ................................................................................................. 6

Fed. R. Civ. P. 45(d)(1) and 45(d)(3) ........................................................................... 3

Fed. R. Civ. P. 45(d)(2)(B) ............................................................................... 14, 28, 30

Fed. R. Civ. P. 45(d)(2)(B), 45(e)(2)(A) ....................................................................... 4

Fed. R. Civ. P. 45(d)(2)(B)(ii), 45(d)(3)(A), (g) .......................................................... 4

Fed. R. Civ. P. 45(d)(3)(A) .......................................................................................... 15

Fed. R. Civ. P. 45(d)(3)(A) (iii), (iv) ........................................................................... 16

Fed. R. Civ. P. 45(d)(3)(A) (iv) ................................................................. 6

Fed. R. Civ. P. 45(e)(2)(a) ....................................................................... 15

Fed. R. Civ. P. 45(g) ...................................................................... 15, 29

**Other Authorities**

O.C.G.A 42-5-36................................................................................ 21

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JASON MCGEHEE, *et al.,* | § | |
|     *Plaintiffs,* | § | |
| | § | Case No. 4:18-mc-01546 |
| v. | § | |
| | § | Related to E.D. Ark. Case |
| TEXAS DEPARTMENT OF | § | No. 4:17-CV-00179-KGB |
| CRIMINAL JUSTICE, | § | |
|     *Defendant.* | § | |

TEXAS DEPARTMENT OF CRIMINAL JUSTICE'S DISPOSITIVE MOTION TO
DISMISS PLAINTIFFS' MOTION TO COMPEL COMPLIANCE WITH SUBPOENA

TO THE HONORABLE JUDGE OF THE DISTRICT COURT:

The Texas Department of Criminal Justice (TDCJ) moves to dismiss Plaintiffs' Motion to

Compel Compliance with a subpoena (ECF 1) for failure to state a claim and for insufficient

service of process pursuant , Fed. R. Civ. Proc. 12(b) (4), (5), and (6),  as follows:

I.      **Summary of litigation and defective issuance and service of summons and subpoena**

The litigation history of this case is set out in *McGehee v. Hutchinson,* 854 F.3d 488, 492

(8th Cir. 2017) (en banc) (cert. denied, 137 S.Ct. 1275, (2017). The 8th Circuit held that:

> The possibility that Arkansas could acquire pentobarbital for use in executions is too
> speculative to justify stays of execution. Arkansas made at least three unsuccessful
> inquiries about obtaining barbiturates in 2015, and the difficulty of obtaining drugs for use
> in lethal injection is well documented. Sevoflurane gas and nitrogen hypoxia have never
> been used to carry out an execution. With no track record of successful use, these methods
> are not likely to emerge as more than a "slightly or marginally safer alternative." *Glossip,*
> 135 S.Ct. at 2737; see *494 Baze,* 553 U.S. at 41, 128 S.Ct. 1520 (discussing "untried and
> untested alternatives").[1] The firing squad has been used by only one State since the 1920s.
> It requires trained marksmen who are willing to participate and is allegedly painless only
> if volleys are targeted precisely. The record comes short of establishing a significant
> possibility that use of a firing squad is readily implemented and would significantly reduce
> a substantial risk of severe pain.

---

[1] *Baze v. Rees,* 553 U.S. 35(2008).

Plaintiffs filed a new civil proceeding and issued a summons directed to TDCJ and to former director Brad Livingston, the former Executive Director, seeking enforcement of an unserved or improperly served subpoena. ECF 2, 3. Plaintiffs correctly recognized that to serve TDCJ, service on its Executive Director is required.  Tex. Civ. Prac. & Rem. Code 101.102(c) requiring service "on the administrative head of the governmental unit". The administrative head of TDCJ, since August 1, 2016, is Brian Collier, not Brad Livingston. http://www.tdcj.texas.gov/TDCJ_announces_new_executive_director.html.[2] The subpoena duces tecum Plaintiffs seek compliance with, **Exhibit 1** attached, was not served on TDCJ's custodian of records, despite the undersigned having repeatedly noticed Plaintiffs' counsel of this deficiency and offered to identify the name, title and location of the custodian of records sought.

## II.     The subpoena has not been served on TDCJ's custodian of records

On February 22, 2018, a subpoena duces tecum was served on TDCJ Human Resource Specialist I, Sherri Jackson.  **Exhibit 1** attached. Ms. Jackson cannot be compelled to comply with the subpoena because she does she have possession or control of the documents sought. A federal court cannot compel a person to produce something the person does not have and cannot access. Objections to the subpoena were filed putting Plaintiffs' counsel on notice that the subpoena was not served on a person who possess those records.  The undersigned offered to provide the records custodians' contact information but Plaintiffs' counsel expressed d no interest in this information. Ms. Jackson does not have the ability or authority to comply with a subpoena requiring production of records that are not accessible by her. Sherri Jackson is not the designated custodian of those records. She has no authority to access, copy or send TDCJ records to anyone and is prohibited by Texas law as well as TDCJ Employee Rules. TDCJ's designated custodians of the records

---

[2]  A summons was also served on Sherri Jackson.  She is also not the TDCJ Director, who is Brian Collier.

identified in the subpoena have not been served. Ms. Jackson has no present ability to comply with this subpoena, is not authorized to authenticate or produce such records, these records are not in her possession or control and she would be subject to disciplinary measures for violation of TDCJ employee rules if she attempted to access such records. See **Exhibit 2**, affidavit attached. If she disregarded TDCJ employee rules and obtained and provided those records to Plaintiffs, she could also be prosecuted under Texas law. [3]

Likewise, service of a subpoena on the undersigned attorney for TDCJ is not sufficient service of the subpoena on TDCJ. *Maiz v. Virani,* 311 F.3d 334, 340 (5th Cir. 2002)

> The judgment creditors contend that service was made on the Sanig's attorney of record by facsimile. This argument is unavailing. Putting to one side the issue of whether the attorney allegedly served by fax was appellants' attorney of record, there is no evidence that the alleged attorney had the actual authority to accept service of process. Therefore, the alleged service was not valid. U.S. v. $184,505.01, 72 F.3d 1160, 1164, n. 10 (3rd Cir.1995, cert. denied by *McGlory v. U.S.,* 519 U.S. 807, 117 S.Ct. 48, 136 L.Ed.2d 13 (1996)) (validity of service of process upon the attorney depends upon the actual authority of the attorney to receive process on behalf of the individual.

The actual custodians of the records identified in the subpoena are:

Ron Steffa                                Lorie Davis
Deputy Chief Financial Officer            Director Correctional Institutions Division
861-B IH 45 North, Room #216              861-B IH 45 North, Room #226
Huntsville, TX 77320                       Huntsville, TX 77320

Sharon Howell
General Counsel
861-B IH 45 North, Room #111
Huntsville, TX 77320

None of them have been served with the subpoena that is the subject of Plaintiffs' Motion to Compel. Federal Rule of Civil Procedure 45(d)(1) and 45(d)(3) permit this Court to quash a subpoena when compliance requires the disclosure of privileged information or when it subjects a

---

[3] Violation of TEX GOV'T CODE 552.352. DISTRIBUTION OR MISUSE OF CONFIDENTIAL INFORMATION is punishable by a fine of not more than $1,000 and/or confinement in the county jail for not more than six months.

person to undue burden.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.
…

(3) Quashing or Modifying a Subpoena.

(A) When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

It would be an "undue burden" for Sherri Jackson to subject herself to termination and criminal prosecution to produce documents she does not have, cannot access and which are privileged from disclosure by Texas civil and criminal statutes. If a records custodian had been served, compliance may be compelled in the Southern District of Texas where the records are located and where the custodian of those records resides. Fed. R. Civ. Proc. 45(d)(2)(B)(ii), 45(d)(3)(A), (g). *United States v. Omnicare, Inc*., 2015 U.S. Dist. LEXIS 104819 (M.D.Ga. 2015). (dismissing a motion to quash for lack of jurisdiction because the place of compliance was in Philadelphia, not in the Middle District of Georgia where the suit was filed). A non party serving objections on the party issuing the subpoena need not comply with subpoena directives, but, may instead, serve the issuing party with its objections. Fed. R. Civ. Proc. 45(d)(2)(B), 45(e)(2)(A).[4]

---

[4] (2) Claiming Privilege or Protection.
  (A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  (i) expressly make the claim; and
  (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim that date.

### III.    The documents requests identified in the subpoena are overbroad

**Exhibit 1**, **Attachment A** directs TDCJ to produce documents unlimited in time. TDCJ, previously called the Texas Department of Corrections, is organized under Tex. Gov't. Code Chapter 493 (Acts 1991). It has existed since 1848, when the Texas Legislature passed "An Act to Establish a State Penitentiary".[5]   Accordingly, Exhibit 1 requests documents either generated in the last 27 years since TDCJ's statutory organization in 1991, or documents generated in the last 170 years, since its creation in 1848 depending on which statute is used. Unlimited document time ranges are overbroad and unduly burdensome. *In re: Virginia Dep't of Corrections v. Jordan, No. 3:17mc02,* 2017 WL 5075252 at *5 (E.D. Va. Nov. 3, 2017):

> In order to avoid imposing an undue burden, third-party subpoenas, like the one before the Court, "must be narrowly crafted to relevant subject matter in the underlying litigation." Id. at *6 n.6 (citing *Theofel v. Farey-Jones,* 359 F.3d 1066, 1071–72 (9th Cir. 2004); *In re Subpoena Duces Teucm to AOL, LLC*, 550 F. Supp. 2d 606, 612 (E.D. Va. 2008)).

Therefore, in assessing whether a subpoena imposes an undue burden

> [c]ourts should balance the need for discovery against the burden imposed on the person ordered to produce documents. Non-party status is one of the factors the court uses in weighing the burden of imposing discovery. An undue burden is identified by looking at factors such as relevance, the need for the documents, the breadth of the document request, the time period covered by such request, the particularity with which the documents are described, and the burden imposed.…disclosures pursuant to a subpoena that impede a state's ability to carry out executions constitute an undue burden. See *Ohio Execution Protocol Litigation,* 845 F.3d 231, 238–39 (6th Cir. 2016); *In re Mo. Dep't Corr.,* 839 F.3d 732, 737 (8th. Cir. 2016).

### IV.    No production costs were paid to Sherri Jackson.

Fees for copying and producing documents were not tendered to Ms. Jackson when the subpoena was delivered to her. A subpoena may be quashed if it subjects a person to undue burden.

---

[5] https://en.wikipedia.org/wiki/Texas_Department_of_Criminal_Justice
  https://tshaonline.org/handbook/online/articles/jjp03

Fed. R. Civ. Proc., Rule 45(d)(3)(A) (iv). **Exhibit 1** was served without payment of copy costs or

witness fees. Fed. R. Civ. P. 45(b)(1). Witnesses and document providers may not be subjected to

undue financial burdens and are entitled to compensation for subpoena compliance. Tex. Civ. Prac.

& Rem. Code Sec. 22.001(a):

> WITNESS FEES. (a) Except as provided by Section 22.002, a witness is entitled to 10
> dollars for each day the witness attends court. This fee includes the entitlement for travel
> and the witness is not entitled to any reimbursement for mileage traveled.

> Tex. Civ. Prac. & Rem. Code Sec. 22.004:

> Sec. 22.004. FEE FOR PRODUCTION OR CERTIFICATION OF
> DOCUMENTS.

> (a) A custodian of a record who receives a request for production or certification of a record
> under a subpoena, a request for production, or other instrument issued under the authority
> of a tribunal that compels production or certification of a record is entitled to $1 for
> production or certification of the record. If more than one record is produced or certified,
> the custodian of the records is entitled to only one fee under this section.
> ...
> (c) The party who requests production or certification of a record shall pay the fee required
> for the record, as provided by this section, at the time the subpoena, request, or other
> instrument is served.
> ...
> (e) The fee required by this section is in addition to any other fee imposed by law for the
> production or certification of a record.

Absent personal service on TDCJ's designated custodian of records of a subpoena together

with the required witness, production and certification fees, this subpoena is unenforceable. *Pride*

*Family Brands, Inc. v. Carls Patio, Inc*., 2013 U.S. Dist. LEXIS 123787, 2013 (S.D. Fla. 2013).

## V.   Privilege

TDCJ changed from a three-drug to a one-drug lethal injection protocol in 2012. *Whitaker*

*v. Collier,* 862 F.3d 490, 496 *(5*[th] Cir. 2017)*; Whitaker v. Livingston,* No. H-13-2901 2016 WL

3199532, at *5 (S.D. Tex., June 6, 2016), quoting *Trottie v. Livingston,* 766 F.3d 450, 453 (5th

Cir. 2014). However, the number of drugs used or whether there is one or more than one supplier, in either circumstances, the subpoenaed items are privileged and confidential under Texas law. Disclosure of the items identified in **Exhibit 1** will result in the cessation of executions in Texas, as its supplier is likely to cease supplying Texas. See **Exhibit 4,** declaration of TDCJ's supplier.

[6] This has been recognized as a significant risk in numerous jurisdictions. *Jordan v. Hall,* No.: 3:15CV295HTW-LRA, 2018 WL 1546632 at *9-11 (March 29, 2018):

> …as anti-death-penalty advocates pressured pharmaceutical companies to refuse to supply the drugs used to carry out death sentences. The sole American manufacturer of sodium thiopental, the first drug used in the standard three-drug protocol, was persuaded to cease production of the drug. After suspending domestic production in 2009, the company planned to resume production in Italy. Koppel, Execution Drug Halt Raises Ire of Doctors, Wall Street Journal, Jan. 25, 2011, p. A6. Activists then pressured both the company and the Italian Government to stop the sale of sodium thiopental for use in lethal injections in this country. Bonner, Letter from Europe: Drug Company in Cross Hairs of Death Penalty Opponents, N.Y. Times, Mar. 30, 2011; Koppel, Drug Halt Hinders Executions in the U.S., Wall Street Journal, Jan. 22, 2011, p. A1. That effort proved successful, and in January 2011, the company announced that it would exit the sodium thiopental market entirely. See Hospira, Press Release, Hospira Statement Regarding Pentothal ™ (sodium thiopental) Market Exit (Jan. 21, 2011).
>
> After other efforts to procure sodium thiopental proved unsuccessful, States sought an alternative, and they eventually replaced sodium thiopental with pentobarbital, another barbiturate…
>
> Before long, however, pentobarbital also became unavailable. Anti-death-penalty advocates lobbied the Danish manufacturer of the drug to stop selling it for use in executions. See Bonner, supra. That manufacturer opposed the death penalty and took steps to block the shipment of pentobarbital for use in executions in the United States. Stein, New Obstacle to Death Penalty in U.S., Washington Post, July 3, 2011, p. A4. Oklahoma eventually became unable to acquire the drug through any means. The District Court *2734 below found that both sodium thiopental and pentobarbital are now unavailable to

---

[6] *Owens v. Hill, supra,* 295 Ga. 302, 317 (2014) ("without the confidentiality offered to execution participants by the statute, as the record and our case law show, there is a significant risk that persons and entities necessary to the execution would become unwilling to participate."); *Gissandaner, v. Commissioner, Georgia Department of Corrections,* 803 F.3d 565, 569 (11th Cir. 2015) ("to require...that Georgia open up about its source of pentobarbital would result in the drug becoming completely unavailable for use in executions."); *Gissandaner v. Ga. Dep't of Corr.,* 779 F.3d 1275, 1283 (11th Cir. 2015 (cert. den. *Gissandander v. Bryson,* 135 S. Ct. 1580 (2015) (holding that in an eighth amendment challenge, the source of the drug and the qualifications of the individual administering it are not relevant).

Oklahoma. App. 67–68.

…

For these reasons, other courts have also protected this type of information from disclosure. Earlier, counsel for Plaintiffs in this case served subpoenas on the correctional departments of several Defendants to discover the identities of their suppliers. Missouri, Virginia, Alabama, and Ohio come to mind.

**Missouri:** The Missouri Department of Corrections, among others, sought court protection from the subpoenas, and that dispute went to the Eighth Circuit Court of Appeals. As is the case here, Missouri's Department of Corrections claimed that its drug supplier had announced that it would refuse to supply further drugs if its identity was disclosed to anyone. In light of this potential elimination of Missouri's supplier, the court granted Missouri's request for relief. In so doing, the Eighth Circuit noted that compelling Missouri to identify its supplier "will not help the inmates establish the existence of an available alternative method of execution." *In re Missouri Dep't of Corrections, 839 F.3d 732, 736 (8th Cir. 2016).* Moreover, as shown, eliminating that supplier as a source for execution drugs would cause an undue burden on Missouri, justifying protection under Fed.R.Civ.P. 4512. Requiring confidentiality by means of a protective order to limit disclosure is not a satisfactory solution, both because the supplier would not sell any more drugs if its identity was disclosed to anyone, as well as the risk, perhaps particularly great in this type of litigation, that an unintended disclosure to persons not directly related to this lawsuit would occur. Id. at 737.

**Virginia:** A similar request was made by subpoena to the Virginia Department of Corrections, which filed a motion to quash. Although the situation was slightly different, the test was the same. There, the Department of Corrections refused to provide information that would disclose the name of its supplier or the members of its execution team. The district court granted the motion to quash, holding that "disclosures pursuant to a subpoena that impede a state's ability to carry out executions constitute an undue burden." *In re: Virginia Dep't of Corrections v. Jordan, 2017 WL 5075252 at *5 (E.D. Va. Nov. 3, 2017).* Alabama: In a case out of Alabama that did not involve these Plaintiffs, the district court limited discovery of the supplier of lethal injection drugs, instead requiring the State to produce a "general description" of its efforts to obtain pentobarbital, identifying whether it had been successful in obtaining the drug, and, if not, why not. *Arthur v. Commissioner, Alabama Dep't of Corrections, 840 F.3d 1268, 1304-05 (11th Cir. 2016).* The Eleventh Circuit affirmed the lower court, stating, "This information was precisely what Arthur needed to prove his Eighth Amendment claim." *840 F.3d at 1305.* In that case, Thomas D. Arthur, a death row inmate who brought § 1983 action against Commissioner of Alabama Department of Corrections, challenged the State's method of execution under Eighth and Fourteenth Amendments. Refusing to expand the scope of discovery, the court found that the prisoner "has given us no reason to think that the ADOC13 lied or presented false evidence either during discovery or at trial and, indeed, the district court noted that the ADOC had claimed to produce everything of relevance." Id.

*11 **Ohio**: Similarly, the Sixth Circuit has affirmed a district court's limitation of discovery in a challenge to a lethal injection protocol. After explaining the analysis that should be

conducted when considering a protective order, the court said, "Good cause exists if 'specific prejudice or harm will result' from the absence of a protective order." *In re Ohio Execution Protocol Litigation,* 845 F.3d 231, 236 (6th Cir. 2016). Reviewing evidence of pressure applied to pharmacies supplying lethal injection drugs, the district court found that the potential harm and prejudice to those pharmacies was demonstrated by the evidence provided by the State. If the drugs thereby became unavailable, "Defendants will suffer an undue burden and prejudice in effectuating Ohio's execution protocol and practices." Id. at 239 (citing *Cooey v. Strickland,* 604 F.3d 939, 946 (6th Cir. 2010)). Moreover, even though the district court used the State's law on confidentiality of information regarding lethal injection, "this result does not federalize the Ohio secrecy law as a common-law privilege for immunity. The district court referenced the statute as an evidentiary data point for analysis only."

With regard to the identity of people involved in the execution process, the Court's analysis is based on the balancing required by Rule 26(c), regardless of whether those people would be covered under the Mississippi statute. Many of the cases cited above considered protecting the identities of execution team members to be akin to protecting the identities of suppliers. *In re Ohio Execution Protocol,* 845 F.3d at 238-39; *In re Missouri Dep't of Corrections,* 839 F.3d at 737; In re Virginia Dep't of Corrections, 2017 WL 5075252 at * *19-22. In conducting this analysis, this Court believes that an opinion from the Supreme Court of Tennessee best explains the problem:

> Any constitutionally valid means of execution requires the participation of numerous individuals (collectively, "the Participants"). Nevertheless, the execution of condemned inmates remains a highly divisive and emotionally charged topic in Tennessee. Revealing the identities of the Participants, even subject to a protective order, creates a risk that the Participants would be deterred from performing their lawful duties.
> …

Here, the Plaintiffs say that they need information on suppliers and personnel to show that their alternative execution drug, pentobarbital, is available. The Defendants counter that the Plaintiffs could themselves obtain information to support that claim by simply creating a list of pharmacies and calling them to determine whether any would be willing to sell pentobarbital to the Mississippi Department of Corrections for use in executions. As the Eleventh Circuit held, "The evidentiary burden is on [the Plaintiff] to show that 'there is now a source for pentobarbital that would sell it to the ADOC for use in executions.' " *Arthur v. Commissioner, Alabama Department of Corrections,* 840 F.3d 1268, 1302 (11th Cir. 2016). The burden is not on the Department of Corrections to show that it cannot acquire the drug. Id. at 1303.

The Court has reviewed these arguments and the applicable law and is of the opinion that, on balance, the hardship to the Defendants of preventing them from obtaining lethal execution drugs outweighs the Plaintiffs' need for this information, which could be gathered by other means. Entry of a protective order merely limiting the dissemination of information is an unsatisfactory alternative, as the drug supplier has made it clear that it

9

will discontinue selling the necessary drugs if its identity is revealed. There is no allowance for revelation by court order. Moreover, the inherent danger and hardship that would follow even an inadvertent disclosure convince the Court that it must protect the information at issue from discovery. For these reasons, the Defendants are entitled to withhold from discovery any material that would identify suppliers of lethal injection drugs or persons involved in the execution process.

In addition to the established risk of supplier risk throughout numerous jurisdictions, TDCJ's supplier has, by declaration, indicated its intent to cease supplying TDCJ with the lethal injection chemicals, should its identity be revealed:  (Exhibit 4 attached)

    3. Pharmacy X has supplied lethal injection chemicals to the Texas Department of Criminal Justice for use in executions of death row inmates.

    4. Pharmacy X's decision to supply the Texas Department of Criminal Justice with lethal injection chemicals was and is contingent on Pharmacy X's identity remaining secret. If Pharmacy X's identity is disclosed or revealed, Pharmacy X will no longer conduct business with (TDCJ).

    5. Pharmacy X did not and will not supply lethal injection chemicals to any state other than Texas under any circumstances.

    6. Pharmacy X reasonably fears that if its identity is disclosed or revealed, anti-death penalty advocates will harass and retaliate against Pharmacy X, resulting in physical and financial harm to Pharmacy X, its owner(s), and its employees.

    7. Pharmacy X's fears are based, in part, on documentary evidence of threats, harassment, and boycotts to which other suppliers of lethal injection drugs have been subjected as a result of their lawful decision to supply state correctional departments with drugs needed to carry out executions.

Recognizing state confidentiality interests in non disclosure of the details regarding execution drug suppliers is *First Amendment Coalition of Arizona, Inc., et al., v. Ryan,* No. 2:14-CV-01447-NVW-JFM, 2016 WL 2893413 *12 (D. Ariz. May 28, 2016):

In *Wellons v. Comm'r, Georgia Dept. of Corrections*, 754 F.3d 1260 (11th Cir.2014), the Eleventh Circuit considered an inmate's claim that the state's failure to provide information about his execution violated his First Amendment right of access to governmental proceedings. The court denied the claim, explaining:

Neither the Fifth, Fourteenth, or First Amendments afford Wellons the broad right "to know where, how, and by whom the lethal injection drugs will be manufactured," as well

as "the qualifications of the person or persons who will manufacture the drugs, and who will place the catheters." ...Wellons has not established a substantial likelihood of success on the merits of his claim that the dearth of information regarding the nature of the pentobarbital that will be used in his execution and the expertise of those who will carry it out violates the First Amendment or his right to due process. *Id.* at 1267 (quotation omitted)

In *Zink v. Lombardi,* 783 F.3d 1089, 1112-1113 (8th Cir.2015), the Eighth Circuit rejected the prisoners' claim of a First Amendment right to information concerning the source of compounded pentobarbital. The court first noted that it had never "ruled that an execution constitutes the kind of criminal proceeding to which the public enjoys a qualified right of access under the First Amendment." Id. The court then explained that even if Press– Enterprise did apply to executions, as the Ninth Circuit held in California First Amendment Coalition, the prisoners still failed to state a First Amendment claim:

> In sum, the prisoners fail to state a claim of a qualified right of public access to information regarding the source of the compounded pentobarbital to be used in their executions because they do not plausibly allege a history of openness to the general public. The complaint likewise provides no basis to conclude that public access to detailed information about execution protocols plays a significant positive role in the functioning of the process in question, given that the practical effect of public disclosure would likely be frustration of the State's ability to carry out lawful sentences.

Under Texas law, it a crime to release the information set out in the subpoena:

TEX.GOV'T CODE SEC. 552.1081

Information is excepted from the requirements of Section 552.021 if it contains identifying information under Article 43.14, Code of Criminal Procedure, including that of:

(1)  any person who participates in an execution procedure, including a person who uses, supplies, or administers a substance during the execution; and

(2)  any person or entity that manufactures, transports, tests, procures, compounds, prescribes, dispenses, or provides a substance or supplies used in an execution.

TEX. CODE OF CRIM. PROC. ART. 43.14(b)

The name, address, and other identifying information of the following is confidential and excepted from disclosure under Section 552.021, Government Code:

(1) any person who participates in an execution procedure described by Subsection (a), including a person who uses, supplies, or administers a substance during the execution; and

(2) any person or entity that manufactures, transports, tests, procures, compounds, prescribes, dispenses, or provides a substance or supplies used in an execution.

TEX GOV'T CODE 552.352. DISTRIBUTION OR MISUSE OF CONFIDENTIAL INFORMATION.

(a) A person commits an offense if the person distributes information considered confidential under the terms of this chapter.

(a-1) An officer or employee of a governmental body who obtains access to confidential information under Section 552.008 commits an offense if the officer or employee knowingly:

(1) uses the confidential information for a purpose other than the purpose for which the information was received or for a purpose unrelated to the law that permitted the officer or employee to obtain access to the information, including solicitation of political contributions or solicitation of clients;

(2) permits inspection of the confidential information by a person who is not authorized to inspect the information; or
(3) discloses the confidential information to a person who is not authorized to receive the information.

(b) An offense under this section is a misdemeanor punishable by:

(1) a fine of not more than $1,000;
(2) confinement in the county jail for not more than six months; or
(3) both the fine and confinement.

(c) A violation under this section constitutes official misconduct.

TEX. PEN. CODE SEC. 39.02 ABUSE OF OFFICIAL CAPACITY.

(a) A public servant commits an offense if, with intent to obtain a benefit or with intent to harm or defraud another, he intentionally or knowingly:

(1) violates a law relating to the public servant's office or employment; or

(2) misuses government property, services, personnel, or any other thing of value belonging to the government that has come into the public servant's custody or possession by virtue of the public servant's office or employment.

(b) An offense under Subsection (a)(1) is a Class A misdemeanor.

(c) An offense under Subsection (a)(2) is:

(1) a Class C misdemeanor if the value of the use of the thing misused is less than $100;
(2) a Class B misdemeanor if the value of the use of the thing misused is $100 or more but less than $750;

(3) a Class A misdemeanor if the value of the use of the thing misused is $750 or more but less than $2,500;

(4) a state jail felony if the value of the use of the thing misused is $2,500 or more but less than $30,000;

(5) a felony of the third degree if the value of the use of the thing misused is $30,000 or more but less than $150,000;

(6) a felony of the second degree if the value of the use of the thing misused is $150,000 or more but less than $300,000; or

(7) a felony of the first degree if the value of the use of the thing misused is $300,000 or more.

Courts have rejected compelling discovery detailing States' supply chain of execution drugs designated as confidential by state law. *First Amendment Coalition of Arizona, Inc., et al., v. Ryan,* No. 2:14-CV-01447-NVW-JFM, 2016 WL 2893413 *8, 14-15 (D. Ariz. May 28, 2016) citing *Jones v. Comm'r, Ga. Dep't of Corr.,* 811 F.3d 1288, 1293 (11th Cir.2016), cert. den. *Jones v. Bryson,* 136 S. Ct. 998 (2016) (Plaintiff sought the identity of the manufacturer of the drugs Georgia intended to use to execute him, contrary to Georgia's secrecy statute prohibiting such disclosure. Noting that no other circuit had recognized such a right to manufacturer identity, the Eleventh Circuit denied relief.); *Trottie v. Livingston,* 766 F.3d 450, 452 (5th Cir. 2014), cert. den. 135 S. Ct. 41 (2014) (Texas disclosed the type, amount, and expiration date of the drug to be used, and the fact that independent laboratory testing confirmed the potency and purity of the drug; it also confirmed that the execution would be carried out in conformity with its prior thirty-three executions. The court found that the inmate's speculation "that there are unknowns regarding the

drug to be used which may add an unacceptable risk of pain and suffering" was insufficient to warrant general discovery into the process."). In accord are *Phillips v. DeWine,* 92 F. Supp. 3d 702 (S.D. Ohio 2015); *Owens v. Hill,* 758 S.E. 2d 794 (Ga. 2014); *Bryan v. State,* 753 So. 2d 1244 (Fla. 2000); *Kelley v. Johnson, et al,* No CV-15-992 (Ark. 2016); *Zink v. Lombardi,* 783 F3d 1089 (8th Cir. 2015) (holding that public access to the identity of suppliers of drugs for lethal injections does not play a significant role in the functioning of the process "given that the practical effect of public disclosure would likely be frustration of the State's ability to carry out a lawful sentence"); *Wellons v. Comm'r,* 754 F.3d 1260 (11th Cir. 2014): *In re Lombardi,* 741 F.3d 888 (8th Cir. 2014); *Sepulvado v. Jindal,* 729 F.3d 413 (5th Cir. 2013): *Valle v. Singer,* 655 F.3d 1223 (11th Cir. 2011); *Pardo v. State,* 108 So. 3d 558 (Fla. 2012); *Lockett v. Evans,* 330 P.3d 488 (Okla. 2014); *West v. Schofield,* 460 S.W 3d 113 (Tenn. 2015); *Schad v. Brewer,* No. CV-13-2001-PHX-ROS, 2013 WL 5551668 *9 (D. Ariz. 2013) (rejecting argument that "Defendants' concealment of the drug information violates their right to due process and meaningful access to the courts by preventing them from discovering whether they have a colorable claim that their executions will be carried out in violation of the Eighth Amendment.")

## VI.    Applicable Procedure

The subpoena in the above styled cause is issued by a federal court district of Arkansas. Under Rule 45(d)(2)(b)(i) and (d)(3), the court for the district where compliance is required has jurisdiction to adjudicate objections to the subpoena. *United States v. Omnicare, Inc*., 2015 U.S. Dist. LEXIS 104819 (M.D. Ga. 2015). (Dismissing a motion to quash for lack of jurisdiction because the place of compliance was in Philadelphia, not in the Middle District of Georgia where suit was filed). Here, though the suit is filed in an Arkansas federal court, TDCJ is directed to produce the documents in Houston, Texas. Jurisdiction to adjudicate objections to the subpoena is

thus in the place of compliance is Houston, Texas.

Upon serving of subpoena objections on the party issuing the subpoena, "the serving party may move the court for the district where compliance is required for an order compelling production or inspection."

FED. R. CIV. PROC. 45(d)(2)(B):

(d)  Protecting a Person Subject to a Subpoena; Enforcement.

(2)  Command to Produce Materials or Permit Inspection.

(A) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i)  At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

A non-party objecting to a subpoena is not subject to contempt sanctions for non compliance with a subpoena if there is a reasonable basis for objection.[7] *Micro Motion, Inc. v. Kane Steel Co., 894 F.2d 1318, 1322-23 (Fed. Cir. 1990)* ("A nonparty may also merely object to production of documents and things.  By merely objecting, such discovery is foreclosed except pursuant to an order of the court."). Defective service/undue burden and assertion of privilege are  reasonable bases for non compliance of a subpoena.[8]

---

[7] FED. R. CIV. PR OC. 45(g) Contempt. The court for the district where compliance is required— and also, after a motion is transferred, the issuing court— may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

[8] FED. R. CIV. PR OC. 45(d) (3)(A) Quashing or Modifying a Subpoena.
(A)  When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(iii)requires disclosure of privileged or other protected matter, if no  exception or waiver applies;

## VII.     Privilege Log

The following rules govern assertion and adjudication of non party subpoena objections.

FED. R. PROC. 26(b)(5):

(5)   Claiming Privilege or Protecting Trial-Preparation Materials.

(A) Information Withheld. When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

(i)  expressly make the claim; and

(ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

FED. R. CIV. PROC. 45(e)(2)(a)

(5) Claiming Privilege or Protection.

(A) Information Withheld. A Person withholding subpoenaed information under a claim that it is privileged or subject to protection trial-preparation material must:

(i)  expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

*Dole v. Milonas*, 889 F.2d 885, 888 n.3 (9th Cir. 1991). This may include

(1)  the nature of the document
(2)  all persons or entities shown on the document to have received or sent the document.
(3)  all persons or entities known by the responding party to have been furnished the document or informed of its substance.

(4)  date the document was generated, prepared or dated.

---

(iv)subjects a person to undue burden.

Plaintiffs' Motion to Compel does not assert that the privilege log prepared at the time TDCJ filed its objections to the subpoena, **Exhibit 3** attached, did not adequately describe the withheld documents or was otherwise deficient and accordingly, this Response to Plaintiffs' Motion to Compel  by TDCJ does not address the sufficiency of such log.

Fed. R. Civ. P., Rule 45(d)(3)(A) (iii), (iv) permits objection to a subpoena seeking privileged matters. *Aeritas, LLC v. Delta Airlines, Inc*., 2013 U.S. Dist.LEXIS 22654, *5 (N.D. Ga., 2013). *Dering v. Serv. Experts Alliance, LLC*, 2007 U.S. Dist. LEXIS89972, *2 (N.D.Ga. 2007) ("The scope of subpoenas for production of documents pursuant to Rule 45 is the same as the scope of discovery under Rule 26(b) and Rule 34."). Fed. R. Civ. P. 26(b) permits discovery of non-privileged matter that is relevant to a claim or defense. An overbroad subpoena seeking irrelevant information is objectionable.[9] The documents identified for production in Exhibit 1, Attachment A are privileged.  Tex. Code Crim. Proc. art. 43.14(b)(2) (2015) deems confidential, information pertaining to "any person or entity that manufactures, transports, tests, procures, compounds, prescribes, dispenses, or provides a substance or supplies used in an execution.".[10]

---

[9] *Bahrami v. Maxie Price Chevrolet-Oldsmobile, Inc.,* 2013 U.S. Dist. LEXIS 189691, *12-13 (N.D. Ga. 2013) (granting motion to quash on grounds that requests were speculative, overbroad, and irrelevant). A showing of actual relevance, not just possible relevance is required to overcome the protection provided to privileged information. *Flynn v. Roanoke Cos. Group, Inc.,* 2007 U.S. Dist. LEXIS 93716, 21 (N.D. Ga. 2007); *E.E.O.C. v. S. Haulers,* 2012 WL 1768064*3-4 (S.D. Ala. 2012); *E.E.O.C. v. Original Honeybaked Ham Co. of Georgia, Inc.,* 2012 U.S.Dist. LEXIS 37107 *3 (D. Colo 2012; *Liles v. Stuart Weitzman, LLC,* 2010 U.S. Dist. LEXIS 53584, 2010 W L 1839229, *3 (S. D. Fla. 2010); *E.E.O.C. v. Jack Marshall Foods, Inc.,* 2010 U. S. Dist LEXIS 172, *6 (S. D. Ala 2010).

[10] TEX. CODE CRIM. PROC. ART 43.14(b):

The name, address, and other identifying information of the following is confidential and excepted from disclosure under Section 552.021, Government Code:

(1)  any person who participates in an execution procedure described by Subsection (a), including a person who uses, supplies, or administers a substance during the execution; and

(2)  any person or entity that manufactures, transports, tests, procures, compounds, prescribes, dispenses, or provides a substance or supplies used in an execution.

TEX. GOV'T CODE SEC. 552.1081:

## VIII.   Documents identified in the subpoena are not relevant to this litigation

The relevant facts and issues surrounding lethal injection protocol are summarized. *In re Ohio Execution Protocol Litigation,* 881 F.3d 447, 449 (6th Cir. 2018):

> To obtain a preliminary injunction, a plaintiff must meet a four-factor test, *Glossip v. Gross,* —— U.S. ——, 135 S.Ct. 2726, 2736-37, 192 L.Ed.2d 761 (2015), though the "likelihood of success on the merits" factor is determinative here. The merits determination in this case is based on a two- part test in which Tibbetts and Campbell must first show that Ohio's execution protocol "presents a risk that is sure or very likely to cause serious pain and needless suffering." *In re Ohio Execution Protocol (Fears v. Morgan),* 860 F.3d 881, 886 (6th Cir. 2017) (*en banc*), cert. denied, —— U.S. ——, 137 S.Ct. 2238, 198 L.Ed.2d 761 (2017) (quotation marks and citations omitted). If they can satisfy that first part, they must also "prove that an alternative method of execution is available, feasible, and can be readily implemented, among other things." *Id.* at 890 (citing *Glossip,* 135 S.Ct. at 2737 (quotation marks omitted)). "[P]risoners cannot successfully challenge a State's method of execution merely by showing a slightly or marginally safer alternative[;] [they] must identify an alternative that is feasible, readily implemented, and in fact significantly reduces a substantial risk of severe pain." *Glossip,* 135 S.Ct. at 2737...

As noted in *Hamm v. Dunn,* 2018 WL 723104 *10 (N.D. Al., February 6, 2018)*:

> To prevail on an Eighth Amendment challenge to a State's method of execution, a prisoner must demonstrate that "the method presents a risk that is 'sure or very likely to cause serious illness and needless suffering, and give rise to sufficiently imminent dangers.' " *Glossip,* 135 S.Ct. at 2737 (quoting *Baze v. Rees,* 553 U.S. 35, 50, 128 S.Ct. 1520, 170 L.Ed.2d 420 (2008) (plurality opinion) ) (some quotation marks omitted) (emphases in original). In addition, "prisoners must identify an alternative that is feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain." *Id.* (quoting *Baze,* 553 U.S. at 52, 128 S.Ct. 1520) (second alteration in original); see also *Gissendaner v. Comm'r, Ga. Dep't of Corr.,* 803 F.3d 565, 569 (11th Cir. 2015) (applying the readily-available alternative requirement to an as- applied challenge of a State's method of execution). The proposed alternative method "must significantly reduce a substantial risk of severe pain." *Arthur v. Comm'r, Ala. Dep't of Corr.,* 840 F.3d 1268, 1299 (11th Cir. 2016).

*Glossip's* 'known and available' alternative test requires that a petitioner must prove that

---

Information is excepted from the requirements of Section 552.021 if it contains identifying information under Article 43.14, Code of Criminal Procedure, including that of:

(1)  any person who participates in an execution procedure, including a person who uses, supplies, or administers a substance during the execution; and

(2)  any person or entity that manufactures, transports, tests, procures, compounds, prescribes, dispenses, or provides a substance or supplies used in an execution.

(1) the State actually has access to the alternative; (2) the State is able to carry out the alternative method of execution relatively easily and reasonably quickly; and (3) the requested alternative would in fact significantly reduce a substantial risk of severe pain relative to the State's intended method of execution.

*Id.* at 1299 (quotation marks and alteration omitted). The Eleventh Circuit has interpreted the "known and available" prong of Glossip's test to require that the plaintiff first show that the State's statutorily authorized method of execution is unconstitutional before proposing any other method that is not statutorily authorized. Id. at 1316–17; see also *Boyd*, 856 F.3d 853, 867 (11th Cir. 2017).

When a specific State's use of drugs such as pentobarbital and midazolam in lethal injections is challenged, the considerations for determining whether relief is warranted are identified in *Glossip*. TDCJ's storage, supplies or supply source of execution chemicals or drugs has no relevance to any claim arising from the Arkansas Department of Corrections' (ADC) procedures in its administration of the death penalty. Whether Plaintiffs' claims go to ADC's use of non use or protocol for administering drugs, records of TDCJ's stores, supplies or supplier of its drugs is not relevant. TDCJ execution procedures, purchase, use and storage of execution chemicals are not relevant to any issue having to do with the constitutionality of ADC's methods and practices in administration of its laws. Production would be an undue burden as the material is irrelevant and unnecessary as such information could be obtained from other sources:

The Defendants counter that the Plaintiffs could themselves obtain information to support that claim by simply creating a list of pharmacies and calling them to determine whether any would be willing to sell pentobarbital to the Mississippi Department of Corrections for use in executions. …The Court has reviewed these arguments and the applicable law and is of the opinion that, on balance, the hardship to the Defendants of preventing them from obtaining lethal execution drugs outweighs the Plaintiffs' need for this information, which could be gathered by other means.[11]

In accord are *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) (considering the relevance of information requested in the undue- burden test). *In re Ohio*

---

[11] *Jordan v. Hall,* NO.: 3:15CV295HTW-LRA, 2018 WL 1546632 at *9 (March 29, 2018).

*Execution Protocol Litigation*, No. 2:11-cv-1016,  2017 WL 5020138, (S.D. Ohio, November 3, 2017) ("...to challenge successfully a State's chosen method of execution, the plaintiffs must 'establish that the method presents a risk that is sure or very likely to cause' serious pain and 'needless suffering'", citing *Glossip v. Gross*, 135 S.Ct. 2726, 2737  (2015).

Whether or not TDCJ has contacted people/entities about purchasing/obtaining pentobarbital, what supplies it has or its supply sources and the content of such communication, have no relevance to the issue identified in *Glossip* or to whether Arkansas has diligently attempted to identify and procure suppliers, or whether such drugs are readily available to it. TDCJ'S means and methods for obtaining and storing drugs to use in its own lethal injection procedures is not material to the relevant inquiry of whether such drugs are reasonably available to ADC.  As shown by reference to the substantial risks of losing suppliers by other jurisdictions, providing such documents would lead to the termination of services necessary to carry out lawful sentences even with a protective order.[12]

There are three alternative lethal-injection protocols:

1. FDA-approved ultra-short acting barbiturate.
2. FDA-approved short- or intermediate-acting barbiturate.
3. Compounded ultra-short acting barbiturate.

Before  considering  compounded  pentobarbital—a  short  or  intermediate-acting barbiturate— Plaintiffs should be required to prove that all other options are unavailable before seeking discovery on their *fourth* lethal-injection alternative. Whether Plaintiffs claim that use of

---

[12] *Kelley v. Johnson, et al,* No CV-15-992, 496 S.W .3d 346, 361-63 (Ark. 2016) Opinion, pp. 23-27 ("....the Prisoners have failed to demonstrate that the identity of the supplier of the drugs is germane to their cruel-or-unusual-punishment claim...As revealed in the decisions of *Baze* and *Glossip,* it has become a matter of common knowledge that states which sanction capital punishment have encountered increasing difficulties in obtaining drugs that are used to carry out the sentence of death by lethal injection...As has been  well documented, disclosing the information is actually detrimental to the process."

https://caseinfo.aoc.arkansas.gov/cconnect/PROD/public/ck_public_qry_doct.cp_dktrpt_setup_idx

or failure to use pentobarbital violates Arkansas law or the Eighth and Fourteenth Amendments, TDCJ's contacts with people/entities regarding purchasing/obtaining/using pentobarbital in its own execution procedure has no relevance to such an issue or any other issue in this case.

Tex. Code Crim. Proc. art. 43.14(b)(2) and Tex. Gov't Code Sec. 552.1081 deem confidential information regarding "any person or entity that manufactures, transports, tests, procures, compounds, prescribes, dispenses, or provides a substance or supplies used in execution." Tex. Gov't. Code Sec. 552.1081(excepting from disclosure under Section 552.021, identifying information listed under Article 43.14, Code of Criminal Procedure).[13] A privilege bars discovery of protected materials and precludes their admission as evidence. *Somer v. Johnson*, *704 F.2d 1473, 1479 (11th Cir. 1983)*. The "details of any execution chemical or drug" that TDCJ has purchased since 2001 or since 1848 has no relevance to ADC's execution procedures. This request is overbroad and unduly burdensome in its designation of records of events at TDCJ for the past 27-170 years. *Dering v. Serv. Experts Alliance LLC,* 2007 U.S. Dist. LEXIS 89972 *2 (N.D. Ga. 2007) ("The scope of subpoenas for production of documents pursuant to Rule 45 is the same as the scope of discovery under Rule 26(b) and Rule 34."). Fed. R. Civ. Proc. 26(b) permits discovery of non-privileged matter that is relevant to a claim or defense. The material sought by this subpoena is overbroad, irrelevant. *Bahrami v. Maxie Price Chevrolet-Oldsmobile, Inc.,* 2013 U.S. Dist. LEXIS 189691 *12-13 (N.D. Ga. 2013) (denying subpoena enforcement because the requests were speculative, overbroad and irrelevant.).

---

[13] TEX. CODE. CRIM. PROC. ART. 43.14(b). The name, address, and other identifying information of the following is confidential and excepted from disclosure under Section 552.021, Government Code:

(1)  any person who participates in an execution procedure described by Subsection (a), including a person who uses, supplies, or administers a substance during the execution; and
(2)  any person or entity that manufactures, transports, tests, procures, compounds, prescribes, dispenses, or provides a substance or supplies used in an execution.

Tex. Code Crim. Proc. art. 43.14(b)(1)(2) deems confidential documents regarding "any person who participates in the execution procedure . . . including any person who uses, supplies, or administers a substance during the execution" and "any person or entity that manufactures, transports, tests, procures, compounds, prescribes, dispenses, or provides a substance or supplies used in an execution." Drugs are stored by TDCJ employees who can reasonably be regarded as persons participating in execution procedures within the above meaning. Such records are privileged and confidential. **Exhibit 1** may be quashed as was done with a similar subpoena in *Georgia Dept. of Corrections v. Jordan et al.,* Cause No. 1:16-cv-02582-RWS-JCF, 2016 WL 9776069 *8 (N. D. Ga.2016) page 8. ("The Eleventh Circuit's view of Georgia's Lethal Injection Secrecy Act firmly forecloses Jordan and Chase's efforts to secure the information sought by the subpoena, and therefore the motion to quash (Doc 1) is due to be GRANTED.").

Statutory privileges similar to Article 43.14(b)(2) of the Texas Code of Criminal Procedure have been upheld as constitutional. For example, O.C.G.A 42-5-36, the Georgia Lethal Injection Secrecy Act states:

> The identifying information of any person or entity who participates in or administers the execution of a death sentence and the identifying information of any person or entity that manufactures, supplies, compounds, or prescribes the drugs, medical supplied, or medical equipment utilized in the execution of a death sentence shall be confidential and shall not be subject to disclosure under Article 4 of Chapter 18 of Title 50 or under judicial process. Such information shall be classified as a confidential state secret.

The Georgia statute was held constitutional. *Owens v. Hill,* 295 Ga. 302 (2014). If the subpoena issuer has not met its relevancy burden that outweighs the interests a State has in non disclosure, the Court may not permit discovery. *Porter v. Ray,* 461 F.3d 1315 (11th Cir. 2006); *In re Grand Jury Proceedings,* 832 F.2d 554, 560 (11th Cir. 1987). (holding that federal court may uphold a state law privilege when doing so would not substantially burden federal policy).

As in the State of Georgia, Texas has a strong interest in preventing information about its

procurement of drugs for lethal injections. TEX. GOV'T CODE SEC. 552.1081, TEX. CODE

CRIM. PROC.  ART. 43.14(b), TEX. GOV'T CODE 552.352 and TEX. PEN. CODE. SEC.

39.09. *Taylor v. Nix*, 451 F. Supp. 2d 1351, 1354 (N. D. Ga. 2006) (recognizing that "the State of

Georgia has a compelling and justifiable interest in creating and preserving its state secrets

privilege"). *Wellons v. Comm'r, Ga. Dep't of Corr.*, 754 F.3d 1260, 1267 (11th Cir. 2014) (cert

den. *Wellons v. Owens*, 134 S.Ct. 2838 (2014) (holding that "neither the Fifth, fourteenth, or First

Amendments afford the [capital defendant] the broad right to know where, how, and by whom the

lethal injection drugs will be manufactured"); *Gissandaner v. Ga. Dep't of Corr.*, 779 F.3d 1275,

1283 (11th Cir. 2015 (cert. den. *Gissandander v. Bryson*, 135 S. Ct. 1580 (2015) (holding that in

an eighth amendment challenge, the source of the drug and the qualifications of the individual

administering it are not relevant). Arkansas has upheld the confidentiality of its prison system's

lethal injection protocol in *Kelley v. Johnson, et al,* 496 S.W.3d 346 (Ark. 2016):

> Discovering the identity of the supplier does not aid their cause, nor will the lack of
> knowledge hinder their ability to prove their contention that the protocol is constitutionally
> suspect. The circuit court clearly erred in ruling that disclosure is required as a matter of
> due process. We are in agreement with other courts who have reached a similar conclusion.
> See, e.g., *Zink v. Lombardi*, 783 F3d 1089 (8th Cir. 2015); *Wellons v. Comm'r*, 754 F.3d
> 1260 (11th Cir. 2014); *In reLombardi*, 741 F.3d 888 (8th Cir. 2014); *Sepulvado v. Jindal*,
> 729 F.3d 413 (5th Cir. 2013): *Valle v. Singer*, 655 F.3d 1223 (11th Cir. 2011); *Phillips
> v. DeWine*, 92 F. Supp.3d 702 (S.D. Ohio 2015): *Pardo v. State*, 108 So. 3d 558 (Fla. 2012);
> *Lockett v. Evans*, 330 P.3d 488 (Okla. 2014); *West v. Schofield*, 460 S.W. 3d 113 (Tenn.
> 2015)...the Prisoners have failed to demonstrate that the identity of the supplier of the drugs
> is germane to their cruel-or-unusual- punishment claim...As revealed in the decisions of
> *Baze* and *Glossip,* it has become a matter of common knowledge that states which sanction
> capital punishment have encountered increasing difficulties in obtaining drugs that are used
> to carry out the sentence of death by lethal injection...As has been well documented,
> disclosing the information is actually detrimental to the process. See *Zink,* 783 F.3d at 1113
> (holding that public access to the identity of suppliers of drugs for lethal injections does
> not play a significant role in the functioning of the process "given that the practical effect
> of public disclosure would likely be frustration of the State's ability to carry out a lawful
> sentence").
> ...

Courts that have addressed the issue have upheld the laws keeping the identity of the supplier of lethal-injection drugs confidential", citing *Phillips v. DeWine*, 92 F. Supp. 3d 702 (S.D. Ohio 2015); *Owens v. Hill*, 758 S.W. 2d 794 (Ga. 2014); *Bryan v. State*, 753, So. 2d 1244 (Fla. 2000); *Lockett v. Evans*, 330 P.3d 488 (Okla. 2014).

In *Kelley v. Johnson,* No CV-15-992, 496 S.W .3d 361-63 (Ark. 2016) the Arkansas Supreme Court noted in its opinion on page 18 that the Arkansas prison system had submitted an affidavit that it "had made unsuccessful attempts to obtain a barbiturate to use in carrying out capital punishment by lethal injection. Kelley said that potential suppliers of lethal drugs declined to sell them to ADC, and she explained that the sellers were concerned about adverse publicity and the loss of business if they were identified as suppliers of drugs used for executions."

Federal law protects the privacy of individuals who are not parties to an action, especially where, as here, the subpoena seeks information irrelevant to any claim or defense in the above styled cause. *Premium Serv. Corp. v. Sperry & Hutchinson Co.,* 511 F.2d 225, 229 (9th Cir. 1975); *Small v. Provident Life and Acc. Ins. Co.*, No. CIV. A. 98–2934, 1999 WL 1128945, *2 (E.D. Pa. 1999). The privacy interests of individuals and entities that participate or administer executions or manufacture/supply execution drugs need to be protected for their safety. By reaching for documents more than twenty (27) years old-from 1991, to the present, or more than 170 years old from 1848, the subpoena is unduly burdensome, overbroad and seeks irrelevant material. Balancing Texas' interest in protecting these records from disclosure with Plaintiffs' failure to meet their relevancy burden under Rules 26 and 45, the subpoena is properly objected to. Fed. R. Civ. P. 26(c)(1).A district court may "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."); *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) (considering the relevance of information requested in the undue-burden test).

Who TDCJ has contacted about or purchased pentobarbital from is not relevant to whether

24

(ADC) has diligently attempted to find drug suppliers. It does not do show whether execution drugs are readily available to ADC. The relevant inquiry would be what efforts ADC—not TDCJ—made to procure a supplier. Disclosure of supplier information exposes TDCJ to a substantial risk that drug suppliers will cease providing drugs that are essential to carry out lawful Texas sentences even with a protective order.[14]

There are three other alternative lethal-injection protocols—FDA-approved ultra-short acting barbiturate, FDA-approved short- or intermediate-acting barbiturate, and compounded ultra- short acting barbiturate—before considering compounded pentobarbital— a short- or intermediate- acting barbiturates.  Plaintiffs should be required to prove that all other options are unavailable before seeking discovery on their *fourth* lethal-injection alternative. TDCJ's contacts with people/entities regarding purchasing/obtaining pentobarbital and its use under Texas law prove nothing as to whether ADC diligently sought but failed to procure a supplier.  Knowing Texas' source for pentobarbital does not establish that this drug is readily available to ADC. *Glossip v. Gross*, 135 S. Ct. 2726, 2738 (2015) (recognizing state policy interests in non disclosure and holding that a prisoner must establish the existence of a known and available alternative method of execution that would entail a significantly less severe risk than the regimen in place).

The identity of Texas' supplier does not rebut, confirm or tend to prove whether "alternative methods of execution" are "feasible, readily implemented" by ADC. Even if relevance could be shown, the harm of disclosure outweighs Plaintiffs' need for these documents. *McGoy v. Ray*, 164 Fed. Appx. 876, 878 (11th Cir. 2006) (balancing the party's need against the burden of disclosing

---

[14] A sealed document was inadvertently published unredacted in the Paul Manafort prosecution which shows that protective orders can fail, even in the highest of profile cases. https://www.cnn.com/2018/06/13/politics/manafort-witness-tampering-names/index.html

confidential documents, finding that "the court did not abuse its discretion when it found the facts did not rise to the level necessary to overcome the state's interest in maintaining the confidentiality of their parole records."); *Taylor v. Nix*, 451 F. Supp. 2d 1351, 1354 (N. D. Ga. 2006) (denying the plaintiff's motion to compel confidential parole records based on the State's "compelling and justifiable interest" in preserving its confidential records); Without confidentiality, Texas incurs a substantial risk that its drug source will refuse to provide Texas a way to conduct its lawful executions. *Owens, supra*, 295 Ga. at 317 ("without the confidentiality offered to execution participants by the statute, as the record and our case law show, there is a significant risk that persons and entities necessary to the execution would become unwilling to participate."); *Gissandaner v. Commissioner,Georgia Department of Corrections*, 803 F.3d 565, 569 (11th Cir. 2015) ("to require...that Georgia open up about its source of pentobarbital would result in the drug becoming completely unavailable for use in executions."); *Gissendaner v. Ga. Dep't of Corr.*, 779 F.3d 1275 (11th Cir. 2015); *Terrel v. Bryson*, 807 F. 3d 1276 (11th Cir. 2015); *Jones v. Comm'r, Ga. Dep't of Corr.*, 811 F.3d 1288 (11th Cir.2016) (rehearing *en banc* denied, 812 F.3d 923 (11th Cir. 2016).

    In *Wellons v. Comm'r, Ga. Dep't of Corr.,* 754 F.3d 1260, 1262-64, 1267 (11th Cir. 2014) cert den. *Wellons v. Owens*, 134 S.Ct.  2838 (2014), the offender argued that the risks of using pentobarbital from an undisclosed source posed a substantial threat of undue pain and suffering and that the Georgia DOC was denying him the information necessary to determine whether his Eighth Amendment rights might be violated. The Court held that "neither the Fifth, Fourteenth, or First Amendments afford Wellons the right "to know where, how, and by whom the lethal injections will be manufactured."). Texas' confidentiality statute does not prevent Plaintiffs from contacting Texas compounding pharmacies and inquiring whether such pharmacies will supply execution drugs to

ADC. Texas should not be placed at risk of losing its supplier by disclosure when compounding pharmacies throughout the United States and abroad may be contacted directly to determine whether they are able and willing to provide execution drugs to ADC.

In *Arthur v. Dunn*, 2016 U.S. Dist. LEXIS 50756, *24 (M. D. Ala 2016), the Court found that pentobarbital was not readily available to Alabama. The Court held that proof that other states such as Virginia, Texas, Missouri and Georgia have procured pentobarbital does not prove that a feasible and readily available alternative exists for Alabama, nor does it establish that pentobarbital is available to Alabama. In the case at bar, a showing that Texas has obtained pentobarbital does not satisfy Plaintiffs' burden of showing that ADC has a readily available alternative execution protocol. Capital offenders have no right to protected execution materials. *Jones v. Comm'r, Ga. Dep't of Corr.,* 812 F.3d 923, 926 (11th Cir.2016).

> We ought to be particularly reluctant to interfere in Georgia's enforcement of its lethal injection protocol since its current protocol- using compounded pentobarbital provided by an undisclosed source- has actually been used at least seven times in the last year, without incident...Even if we were to grant him the relief he seeks-declaring the Georgia secrecy statute unconstitutional-we do not see how Jones would benefit.  He would have us strike down Georgia's secrecy law, overturn *Wellons,* and require the district court to allow discovery about Georgia's source of pentobarbital, all in the hope that learning the identity of the manufacturer will somehow provide a springboard to establish a potential, if currently unidentifiable, infirmity in Georgia's execution protocol. That asks us to do too much.

TDCJ has established, through precedent, that disclosure of the documents sought in **Exhibit 1** is likely to lead to the termination of services necessary to carry out lawful sentences.

## IX.     Deliberative Process Privilege

The deliberate process privilege protects the internal deliberations of agencies in order to allow them to explore different possibilities and engage in internal debates without fear of public scrutiny. *Ga. Aquarium, Inc. v. Pritzker*, 134 F. Supp. 3d 1374, 1378 (N.D. Ga. 2014). To the extent that the subpoena reaches TDCJ's deliberative process for determining lethal injection

protocol, selection of drugs or legal deliberations in anticipation of litigation, documents are privileged attorney/work product. *Electronic Data Systems Corp. v. Steingraber*, 2003 WL 21653414 (E.D. Tex.2003).

## X.   Plaintiffs' argument that any TDCJ employee may be served with a subpoena has no merit

On page 4, fn. 3 of Plaintiffs' Motion to Compel, without citing authority, claims that by producing some documents voluntarily, TDCJ waived its service objections.  This argument may be disregarded as inadequately briefed. *Yohey v. Collins,* 985 F.2d 222, 224-25 (5th Cir. 1993) (holding that even pro se appellants must brief arguments in order to preserve them). *Doss v. Helpenstell,* 699 Fed.Appx. 337, 338 (5th Cir. 2017) ("Pro se appellants must brief their arguments, even if minimally, in order to preserve them…Doss therefore waived any argument in this respect."). Under Rule 45, Fed. R. Civ. Proc., a subpoena must be served on an individual who has control of the records sought to be produced. *McClendon v. TelOhio Credit Union, Inc*., No. 2:05–CV–1160, 2006 WL 2380601 (S.D.Ohio Aug.14, 2006); *Taylor v. Countrywide Home Loans,* No. 08–13258, 2009 WL 1913417, at *5 (E.D.Mich. June 30, 2009); *Benford v. American Broadcasting,* 98 F.R.D. 40, 41 (D.Md.1983); *Chima v. U.S. Department of Defense,* 23 F.App'x 721, 725 (9th Cir.2001) (holding that subpoenas not personally served were "defectively served"); *Laun v. Laun,* No. 1:06–CV–246, 2007 WL 178607, at *1 n. 1 (N.D.Ind. Jan.19, 2007) (holding that service by certified mail meets the requirements of Rule 45); *Doe v. Hersemann,* 155 F.R.D. 630 (N.D.Ind.1994) (holding that service of a subpoena via certified mail is sufficient under Rule 45); *Franklin v. State Farm Fire and Cas. Co.,* No.2009 WL 3152993, at *2 (E.D.Mich. Sept. 30, 2009) (authorizing service of subpoena via certified mail).  Plaintiffs have done neither as to the custodians of the records.

In *Powell v. Time Warner Cable, Inc.*, No. 2:09–cv–00600, 2010 WL 5464895 at *3 (S.D.

Ohio Dec. 30, 2010), TWC served the proper individual and respondent MT accepted the subpoena without filing objections to service until it filed a response nearly two months after the subpoena was issued:

> … MT accepted service of the subpoena without raising the issue of improper service, even though it raised several other objections. MT first objected to TWC's method of service in its Response, nearly two months after TWC issued the subpoena. Under these circumstances, even if the Court were to interpret Rule 45 to require personal service, MT has waived any claim of defective service.

Unlike MT, TDCJ filed timely objections within 14 days of service as required by Fed. R. Civ. Proc. 45(d)(2)(b), bringing to Plaintiffs' attention that the proper individual was not served and offering to provide Plaintiffs the contact information of the TDCJ custodian of the records sought. Plaintiffs expressed no interest in serving TDCJ's records custodians and never inquired as to the identity and contact information of TDCJ's records custodians. While in *Powell*, an Ohio federal district court opinion, MT was found to have failed to timely object to service, it has no precedential value in a Texas federal district court. *Daubert v. NRA Group, LLC,* 861 F.3d 382 (3rd Cir. July 3, 2017). ("[a] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case."); *Camreta v. Greene,* 563 U.S. 692, 709 n.7, 131 S.Ct. 2020, 179 L.Ed.2d 1118 (2011) (quoting 18 *James W. Moore et al., Moore's Federal Practice* § 134.02[1][d] (3d ed. 2011)); *Threadgill v. Armstrong World Indus., Inc.,* 928 F.2d 1366, 1371 (3d Cir. 1991) ("[I]t is clear that there is no such thing as 'the law of the district.' ").

## CONCLUSION

The subpoena was not served, with applicable fees, on the TDCJ's records custodians. Sheri Jackson is not in possession or control of the records identified in the subpoena. A court may not compel a person to produce records the person does not possess or control. Fed. R. Civ. Proc. 45(g) does not permit the Court to hold a person in contempt who has an adequate excuse

for not producing documents:

> (g) CONTEMPT. The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

The records custodians identified above, who do have the ability to produce the documents, have not been served. The Plaintiffs have expressed no interest in learning their identities or in attempting to serve them. In addition, the items identified in this subpoena are privileged from disclosure by Texas statutes, the categories of documents requested are unduly broad, burdensome, and irrelevant to any issue in litigation and include documents between 27 and 170 years ago. Accordingly, Sherri Jackson and TDCJ ask that this Court deny and dismiss Plaintiffs' Motion to compel for the reasons stated and as permitted by Fed. R. Civ. Proc. 12(b)(4), (5), (6) and 45(D)(2)(B).[15]

                                        Respectfully Submitted,

                                        KEN PAXTON
                                        Attorney General of Texas

                                        JEFFREY C. MATEER
                                        First Assistant Attorney General

                                        BRANTLEY STARR
                                        Deputy First Assistant Attorney General

                                        JAMES E. DAVIS
                                        Deputy Attorney General for Civil Litigation

---

[15] FED. R. CIV. PR OC.45(d)(2)(B) states:

(d) Protecting a Person Subject to a Subpoena; Enforcement.
(2) Command to Produce Materials or Permit Inspection.
Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises…

SHANNA E. MOLINARE
Assistant Attorney General
Chief, Law Enforcement Defense Division

MATTHEW OTTOWAY
Assistant Attorney General
Criminal Appeals Division
Texas State Bar No. 24047707
Southern District I.D. No. 892308
(512) 463-7463 / Fax (512) 936-1280
matthew.ottoway@oag.texas.gov

/s/ Demetri Anastasiadis
DEMETRI ANASTASIADIS
Assistant Attorney General
Law Enforcement Defense Division
Texas State Bar No. 01164480
Southern District I.D. No. 9851
(512) 463-2080 / Fax (512) 370-9374
demetri.anastasiadis@oag.texas.gov

Office of the Attorney General
P.O. Box 12548
Austin, Texas  78711-2548

ATTORNEYS FOR TDCJ &
SHERRI JACKSON

## CERTIFICATE OF SERVICE

I, DEMETRI ANASTASIADIS, Assistant Attorney General of Texas, certify that a copy of

the above has been served via electronic mail on this 25TH day of June, 2018, to:

Brian G. Strand
Fish & Richardson P.C.
1221 McKinney Street, Ste 2800
Houston, TX  77010
strand@fr.com

Kenton W. Freeman
Fish & Richardson, PC
One Marina Park Drive
Boston, MA 02210
kfreeman@fr.com

Joseph B. Warden
Fish & Richardson, PC
One Marina Park Drive
Boston, MA 02210
warden@fr.com

John Charles Williams
john_c_williams@fd.org
***Attorneys for Plaintiffs***

Jennifer Merritt
jennifer.merritt@arkansasAG.gov

/s/ Demetri Anastasiadis
**DEMETRI ANASTASIADIS**
Assistant Attorney General